## AMERICAN LUCOL CO. v. LOWE et al.

(Supreme Court, Appellate Division, First Department.   June 9, 1899.)

1. INSURANCE—ACTION AGAINST UNDERWRITERS—COMPLAINT—MISJOINDER OF PARTIES—DEMURRER.

   A complaint against underwriters of an insurance policy, which alleges that they severally agreed to pay their proportionate part or share of any loss, not exceeding in the aggregate a certain sum, and which demands judgment for each underwriter's proportion of the loss, shows on its face a liability of each underwriter for his proportionate share of the loss, and not for the full amount thereof; so that the objection of an improper joinder of them all in one action, which is not taken by demurrer, is waived.

2. SAME—ANSWER—STATEMENT OF OBJECTION.

   If a complaint against all the underwriters of a fire insurance policy shows on its face a liability of each for the full amount of the loss, in which case all could properly be joined in one action, an answer merely alleging that each of the underwriters was improperly united with the others does not sufficiently state that the underwriters, being in fact severally liable for a proportionate share of the loss, were improperly joined in one action.

3. SAME—RIGHT TO SUE UNDERWRITERS.

   Under a provision, in a fire insurance policy, that assured would bring no action except against the attorneys in fact of the underwriters, the judgment entered to be satisfied first out of unexpended premiums, next out of deposits, and lastly out of the underwriters' individual liability, where, before a loss occurs, the attorneys cease to represent the underwriters, and turn over all the funds, and no other persons are substituted as attorneys, assured may sue the underwriters.

Appeal from trial term, New York county.

Action by the American Lucol Company against William E. Lowe and others. From a judgment for plaintiff entered on a decision of the court without a jury (57 N. Y. Supp. 14), defendants appeal. Affirmed.

Argued before BARRETT, RUMSEY, McLAUGHLIN, and IN-GRAHAM, JJ.

W. C. Beecher, for appellants.

F. K. Pendleton, for respondent.

BARRETT, J.   This action is against the underwriters of what is known as a "Lloyd policy." These underwriters were associated under the name and style of the "Indemnity Lloyd's." The execution of the policy was conceded, the loss, and the proof of loss. The amount due from the underwriters was proved, and was not disputed.   The defense rested upon two points:   First, that the causes of action against the underwriters were several, and consequently that each underwriter should have been sued alone; second, that suit had not in the first instance been brought against the attorneys in fact for the underwriters.

It is a sufficient answer to the first point that the defect relied upon appears upon the face of the complaint, and that the objection thereto, not having been taken by demurrer, was waived. The defendants contend that there is no allegation in the complaint that each underwriter was liable only for his proportionate share of the loss.   As they construe the complaint, it alleges a several liability to insure the plaintiff to the full amount of the loss, not exceeding $5,000.   This is an inaccurate view of the complaint.

We find there an express allegation that "in and by said policy" the defendants "severally agreed to pay, respectively, their proportionate part or share of any loss by fire to the property thereby insured, not exceeding in the aggregate the said sum of $5,000." It is said that this provision refers, not to the proportionate part of the loss payable under the policy, but to the policy's proportion of the total loss, as between it and other insurance. This contention is entirely without merit. The provision in question had no relation to the apportionment of the total loss among the insurers generally, but clearly to the proportionate part of each underwriter's obligation under this particular policy. There can be no misunderstanding about this, either from the tenor of the complaint or the demand for judgment. The latter is expressly limited to each underwriter's proportion of the loss apportioned to the present policy.

We may add that the objection is not sufficiently taken, even by answer. If the objection did not appear upon the face of the complaint, the answer, in taking the objection, should have distinctly pointed out which of "the matters enumerated in section 488" of the Code of Civil Procedure was referred to. None of these matters is covered by the objection. The answer simply states that "each of the defendants above named allege that he has been improperly united with each of the other defendants herein named." This is not an explicit objection that "causes of action have been improperly united," nor "that there is a defect of parties plaintiff or defendant." Indeed, it could not, upon the defendants' own showing, have referred to the latter; for they insist that the allegations of the complaint contemplate a several liability for the whole amount of the loss, and they have in their answer averred nothing to the contrary. It is well settled that, under section 454 of the Code of Civil Procedure, two or more persons severally liable on the same instrument, for the whole amount of its obligation, may be included as defendants in the same action. Straus v. Hoadley, 23 App. Div. 360, 48 N. Y. Supp. 239. It was essential, therefore, to a proper presentation of this objection, that there should have been a statement in the answer to the effect that separate causes of action against each defendant for his proportionate part of the amount insured had been improperly united. There is no such statement in the answer, either in terms or in substance. There is a denial that the defendants contracted jointly, or jointly and severally. This, however, is a denial of something which is not alleged. We find no affirmative allegation that the defendants contracted severally, or, indeed, that they contracted at all. In fact, the existence of the policy is "ignored." It is apparent, therefore, that the objection under consideration was not taken either by demurrer or answer.

The second point is presented by an allegation in the nature of a special plea. The plea is that, "if any policy was issued to the plaintiff as in the complaint alleged, it was in consideration of and under a mutual written agreement whereby it was provided that any action brought by the assured to enforce the provisions of the

policy should be brought against Beecher & Co., as attorneys in fact for and representing all of the underwriters." It is then averred that "no action has been brought by the plaintiff against Beecher & Co., as attorneys in fact representing the said underwriters, and that the defendants have never waived their rights under this condition." The sole question, then, is, was the plaintiff bound in the first instance to sue Beecher & Co.? We have held that provisions of this nature are ordinarily binding, and must be complied with. Leiter v. Beecher, 2 App. Div. 577, 37 N. Y. Supp. 1114. The question here, however, is whether the parties contemplated a resort to this provision after the particular persons named therein as attorneys for the underwriters had ceased to be such attorneys, and had actually transferred the business of the association and the moneys in their hands belonging to the principals to other persons, who thereafter acted as attorneys in fact for the underwriters. The precise point will be more readily understood when we consider the language of the provision. It is in these words:

"No action shall be brought by the assured to enforce the provisions of this policy except against the attorneys in fact, as representing all of the underwriters, and each of the underwriters hereby agrees to abide the result of any suit so brought, as fixing his individual responsibility hereunder.  *  *  *  Judgment entered in such an action shall be satisfied out of the premiums in the hands of the underwriters unexpended and undivided; if such premiums shall be insufficient, then out of the deposit made by the several underwriters; if both shall be insufficient, then out of the individual liability of the several underwriters, as hereinbefore expressed and limited; but in no case shall the judgment bind the property of the said attorneys to a greater extent than the several liabilities of each of them as individual underwriters."

It will be observed that the name of Beecher & Co. does not appear in this direct connection. It is, however, elsewhere provided in the policy that, "wherever the phrase 'attorneys of the underwriters' occurs, it shall be held to mean their attorneys in fact, to wit, Beecher & Co." The object of this provision is quite clear. It was to avoid multiplicity of suits, and to provide a convenient method of settling in one action all questions in dispute between the insured and the underwriters. To do this with justice to both parties, it was essential that the persons sued should be, as the proviso stipulates, "the attorneys in fact, as representing all of the underwriters." The specified firm name does not, under this provision, necessarily, and under all circumstances, determine who shall be sued. The essential fact on that head is the fact of present representation. Justice to the underwriters requires, as we held in Wheelock v. Chapman, 34 App. Div. 464, 54 N. Y. Supp. 327, that the action should be brought against the acting representatives of the underwriters at the time when the liability arises. The underwriters stipulate for an action, not against a fixed and unchangeable personality, but, in effect, against an agency over which they exercise present control and authority. They certainly do not contract to abide the result of a suit brought against persons who, in a business sense, have become strangers to them. Upon the other hand, why should the insured be required to sue persons who have ceased to hold any rela-

tions to their debtors with regard to the subject of the contract? And why, indeed, should those persons be thereafter required to defend any such suit? Justice to the insured must also have been within the intention of the parties, and the contract should be construed in the light of this implied intention. Now, it appears that the attorneys in fact, representing the underwriters, are the recipients of the premiums and other moneys belonging to the association; and that, when Beecher & Co. "went out," all the funds in their hands were turned over to new attorneys in fact, named Edwards & Co. How, then, could a judgment thereafter entered against Beecher & Co. be conveniently satisfied, as the contract provides, "out of the premiums in the hands of the underwriters unexpended and undivided," or "out of the deposit made by the several underwriters"? These premiums and deposit were part of the funds of the association which Beecher & Co. turned over to Edwards & Co. It would be impossible, on a judgment against Beecher & Co., entered after that firm had thus turned over the business and assets in its hands to a new agent, to define with precision, and enforce with certainty, the individual liability of the underwriters under the clause in question; for, as we have seen, it is only when the application of the premiums and deposits has proved insufficient that the judgment is to be satisfied out of the individual liability of the several underwriters. It is clear, therefore, that the condition of this policy was based, at least, upon the existence of attorneys in fact representing the underwriters at the time when the liability arises. If the attorneys in fact are then named in the policy are then dead, and others have not been substituted, certainly the condition cannot be performed, and a direct action will lie against the underwriters. The principle is the same if the attorneys have been discharged, or have resigned, or have otherwise ceased to represent the underwriters. If, in the latter contingency, others have not been substituted, there can be no substantial performance of the condition in accordance with the implied intention of the parties. If others have been substituted, and the insured are notified thereof, and required to regard such substituted agents as the attorneys in fact representing the underwriters, doubtless the provision in question would then apply to such substituted attorneys.

The plea here is that Beecher & Co. should have been sued. That plea fails, for the reasons assigned. There is no plea that Edwards & Co. should have been sued. We may say, however, that the evidence clearly shows that that firm also "went out" in July, 1895, after previously informing the underwriters that there were no funds left to pay losses, that they could no longer carry on the business, and that the original underwriters of the Indemnity Lloyd's would have to take care of themselves as best they could. Thus, when this action was commenced, in April, 1896, there were no attorneys in fact representing the underwriters, and no funds of any description from which to collect the loss, save the individual liability of these defendants. Under these circumstances, the provision became practically inoperative. It contemplated the continued existence of the agency, and was subject to the implied and underlying condition

that the parties should be excused from fulfillment in case such agency had ceased to exist at the time when performance would otherwise be required.

We think, therefore, that the judgment was right, and should be affirmed, with costs. All concur.